UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No. 1:21-cr-35-EGS

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. 1:21-cr-35-EGS-1** |
| **v.** : | |
| : | |
| **JEFFREY SABOL** : | |
| : | |
| **Defendant.** : | |

## OPPOSITION TO DEFENDANT'S MOTION FOR PRE-TRIAL RELEASE

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this opposition to the defendant, Jeffrey Sabol, being released from pre-trial detention. The defendant should be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence]. Moreover, the defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). The Court should order the defendant detained because there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required and ensure the safety of any other person and the community.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## BACKGROUND

**1. Procedural Posture**

On January 15, 2021, the defendant was charged by complaint with violating 18 U.S.C. § 231(a)(3), Civil Disorder. The defendant was arrested on January 22, 2021, and had an initial appearance in the Southern District of New York the same day. A detention hearing was also held on January 22, 2021, and Magistrate Judge Andrew E. Krause held the defendant because he was a "risk of flight/ danger." *See* Minute Entry, 7:21-mj-866-UA-1 (1/22/2021). The defendant was then transported to the District of Columbia area.

On January 29, 2021, the defendant was indicted, along with co-defendants Peter Francis Stager and Michael John Lopatic Sr, for their conduct on January 6, 2021. *See United States v. Jeffrey Sabol et al*, 21-CR-35 (EGS), ECF No. 8. The defendant is charged with one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1), (b); one count of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); two counts of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds With a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A); one count of Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A); and one count of Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(F). The defendant now seeks to be released from detention to Pretrial Services Agency's High Intensity Supervision Program ("HISP").

2

**2. Statement of Facts**

*The Defendant's Initial Presence in Washington D.C.*

On January 4, 2021, the defendant traveled from Denver, CO to Washington, D.C.[1] Cell phone records associated with the defendant's number indicate that the defendant stayed at the Intercontinental Hotel in Washington, D.C. the night of January 4. On January 6, 2021, Sabol went to watch then-President Trump speak at a rally. Sabol was wearing a grey helmet, blue jeans and carrying a green backpack. As discussed below, Sabol spoke extensively with law enforcement about his actions on or around January 6, 2021, and he informed law enforcement that he was wearing the helmet in case he encountered Antifa. In addition to wearing a helmet, the defendant wore steel-toe boots, and carried zip ties and a radio and ear piece.

Sabol advised law enforcement that he participated in a peaceful protest that ended at the U.S. Capitol, but once at the Capitol, he heard flashbangs going off, and recognized that a "battle" was already occurring. Sabol told law enforcement that he is a "warrior" and had to be on the front line. Sabol informed law enforcement that he believed that the Antifa crowd started the battle and that it had been a "perfect set-up." Sabol also told law enforcement that there was no question that the 2020 election was stolen, that he had seen videos of ballots being mishandled, and knew that Dominion voting machines were tampered with.

*The Defendant's Assaultive Conduct at the Capitol's Lower Western Terrace*

According to the defendant's cell phone records, he was in the area around the U.S. Capitol as of 3:29 p.m. While the defendant was outside the U.S. Capitol, Metropolitan Police Department

---

[1] Sabol had previously traveled to Washington D.C. in December 2020 to attend various political and religious rallies.

3

("MPD") Officers B.M. and A.W. were amongst those MPD officers who were directed to report to the U.S. Capitol to assist the U.S. Capitol Police in their duties to maintain the security of the U.S. Capitol. At approximately 4:20 pm, Officers B.M. and A.W., along with their colleagues, walked through the interior tunnel of the U.S. Capitol Building and assumed a post in an archway that provided access to the building's lower western terrace. Both Officers B.M. and A.W. were wearing a full MPD-issued uniform; Officer A.W. was also wearing a MPD-issued neon jacket. Their approximate location is denoted below by the red circle.

*Exhibit 1*



In an approximately 90-second time period, Officers B.M. and A.W., along with at least one other officer, Officer C.M. were brutally assaulted by the rioters, including the defendant. Seconds before the assault began, a member of the crowd pleaded with officers for help, as his friend was dying after being trampled by the mob in and around the tunnel entrance. Officer B.M. recalled overhearing that someone was being trampled, and stated that officers cleared a space for that individual. Starting at approximately 4:27 pm, Officer A.W. was positioned toward the northern edge of the arch when an unknown individual charged at him, grabbed at his face, and ultimately knocked Officer A.W. to his feet. Officer A.W.'s body worn camera ("BWC") shows

4

that while Officer A.W. was laying on his back in the middle of the arch, defendant Sabol approached him and snatched A.W.'s baton out of his hand. *See* Exhibit 2, Officer A.W. BWC. A video posted by Storyful to YouTube[2] shows that Sabol used so much force in snatching A.W.'s baton out of his hands that when he succeeded in wrestling it away from Officer A.W., Sabol fell back down the steps. *See* Exhibit 3.

While Officer A.W. was laying on the ground of the archway, another individual began striking at Officer B.M. with a crutch. That individual eventually grabbed Officer B.M. by the head and helmet, pulled him down, overtop Officer A.W., and started to drag him down the steps into the mob. Sabol then rushed back up the steps, put his left hand on Officer B.M.'s backside, and with his right hand, held the baton that he stole from Officer A.W. up against Officer B.M.'s neck. Sabol then helped drag Officer B.M. down the steps, in a prone position, into the crowd.

*Exhibit 4*



---

[2] *Available at* https://youtu.be/aEGthdTzedk.

5

The Storyful video (Exhibit 3) and officers' BWC confirm Sabol's role in dragging B.M. down the steps. Officer C.M.'s BWC shows (1) Sabol running up the steps as the first individual attempted to drag Officer B.M. down the steps; (2) Sabol holding Officer A.W.'s baton against Officer B.M. as Sabol and others dragged Officer B.M. into the mob; and (3) Sabol continuing to drag Officer B.M. out as other officers reached out to try to bring Officer B.M. back to safety. *See* Exhibit 5A, Officer C.M.'s BWC.

*Exhibit 5B*



*Exhibit 5C*



*Exhibit 5D*



7

*Exhibit 5E*



Once Officer B.M. was dragged out into the crowd, co-defendant Peter Stager used the flagpole of a United States flag to repeatedly strike Officer B.M. *See* Exhibit 3.

When asked about the assault, Officer B.M. remembered having his baton grabbed and he was pulled into the crowd. Once in the crowd, Officer B.M. recalled being struck in the helmet multiple times with objects. Officer B.M. advised that he believed the crowd attempted to take him as deep into the crowd as possible. Sometime later, two individuals in the crowd brought Officer B.M. to a closet area on the side of the terrace, and then over to another platform where other MPD officers were located. As a result of the assaults, Officer B.M. sustained minor bruising to his left shoulder and an abrasion to his nose and right cheek

In the seconds after Sabol dragged Officer B.M. out into the crowd, Officer A.W., who was without his baton for protection, was also dragged out into the violent crowd. Officer A.W. recalled having his helmet ripped off his head and being stripped of his baton, gas mask, and MPD issued cellular phone. As he was dragged into the mob, Officer A.W. was kicked, struck with

8

poles, and stomped on by several individuals. Additionally, Officer A.W. recalled being maced once his mask was ripped off. At some point during the assault, Officer A.W. was able to retrieve his gas mask and one individual prevented the rioters from further assaulting him. Officer A.W. was able to get on his feet and force his way back to the police line at the archway and into the tunnel area. Once A.W. was back in the tunnel, another officer realized A.W. was bleeding from his head. Officer A.W was subsequently taken to Washington Hospital Center and received two staples to close the laceration on his head.

*The Defendant's Attempted Flight to Switzerland and Subsequent Apprehension*

As discussed below, Sabol spoke with law enforcement after he was arrested, and discussed his actions after January 6, 2021. The defendant advised that he left Washington, D.C. on January 7, 2021, and returned to Colorado. The defendant's cell phone records corroborate this travel. Sabol informed law enforcement that he became paranoid that he was going to be charged with sedition, and began destroying anything that could have been misconstrued as antigovernment. Sabol told law enforcement that he placed electronic devices in his microwave and "fried them." He also moved the two firearms that he kept at his residence to an associate's residence.

Sabol then attempted to leave the country, and planned on flying from Boston, MA to Zurich, Switzerland because there was no extradition there, and he could ski for a few days to make it "look natural." The defendant's cell phone records indicate that on January 9, 2021 he was present in Colorado, and that on January 10, 2021, he was in or near Boston. Sabol advised that while he was at the airport in Boston, he saw police officers and thought they mentioned his backpack. Sabol subsequently left the airport, and rented a vehicle, and began to drive south. Sabol further advised that he thought he was being tracked, so he dropped his cell phone out a window while he was traveling over a bridge in Boston.

9

The defendant advised that as he drove south, he eventually attempted to take his own life. On January 11, 2021, at approximately 4:30 pm, officers from the Clarkstown Police Department, responded to a vehicle that was driving erratically in the town of New City, NY. The vehicle was located and the driver, Sabol, was found covered in blood, suffering from severe lacerations to both thighs and arms. While officers aided SABOL, he made several spontaneous statements to include but not limited to: "I am tired, I am done fighting," "My wounds are self-inflicted," I was "fighting tyranny in the D.C. Capitol," and "I am wanted by the FBI".

Clarkstown Police conducted an inventory search of SABOL's vehicle. The inventory included, among other items, razor blades, a note with instruction and password to a computer, Sabol's Passport, Social Security Card, airline e-ticket, rental car agreement, and numerous electronic devices. Most importantly, the car contained a green backpack and a tan Carhartt jacket, similar to the ones depicted in Exhibit 4.

*Sabol's Statements to Law Enforcement*

On January 12, 2021, law enforcement officers spoke with the defendant while he was recovering at the Westchester Medical Center. The defendant advised that on January 6, 2021, he was at the U.S. Capitol and he was wearing a brown Carhartt jacket, a black or grey helmet, a green backpack, and black gloves. The Carhartt jacket was the same jacket that was located in his vehicle the night he attempted suicide and was found by the police, according to Sabol. Sabol told law enforcement that he grabbed the baton off of an officer who was on the ground, and that he saw an officer nearby who "needed help." Sabol stated that he and a few others surrounded the officer and told him "we got you." Sabol stated that he was there to save the two officers that needed help, but it was "evil" that took the baton.

10

On January 13, 2021, law enforcement again spoke with Sabol, and asked him to review Storyful video of the riots that took place on January 6, 2021 at the U.S. Capitol building. Sabol reviewed the video and stated he was indeed in the video, wearing the same clothes he described above. The defendant told law enforcement that on January 6, 2021, he ran up the stairs and jumped over a barricade. Once over the barricade, Sabol dragged a police officer down the stairs away from the tunnel. Sabol acknowledged that the video seemed to depict him throwing punches at the police officer, but he claims he was "patting him on the back" and saying "we got you man." Once at the bottom of the stairs, Sabol claims he "covered the police officer for his own safety" while others hit the police officer with poles. Sabol retreated from that location and ended up on the left side of the stairway with a crowd of people. Sabol told law enforcement that, approximately fifteen minutes later, a "call to battle was announced" and Sabol "answered the call because he was a patriot warrior." The defendant stated that this time he took a police officer's baton out of the officer's hand and used it to "protect the officer" who was on the ground.

The defendant was shown Exhibit 4, the still photo of a police officer lying face down on the ground with Sabol positioned over him. Sabol acknowledged that he is the individual in the picture. The defendant also acknowledged that this picture looked bad and he could not recall if he hit the police officer with the baton because he was in a fit of rage, stating the details are cloudy.

Additionally, while he was speaking with law enforcement, Sabol admitted to deleting numerous text messages and other communications once he believed that law enforcement was looking for him. Sabol specifically recalled that he sent an associate a "selfie video" of himself on January 6, 2021, in which he advised that he had just been pepper sprayed, and stated, "we are going back in." Law enforcement recovered this "selfie" and a text message from Sabol to the associate in which Sabol advised the associate to delete the video.

11

**ARGUMENT**

The defendant is eligible for detention pursuant to § 3142(f)(1)(A) [Crime of Violence] of the federal bail statute. The defendant should also be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2) because he is a flight risk and there is a serious risk that he will obstruct or attempt to obstruct justice. There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there remain no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

1. **Nature and Circumstances of the Offense Charged**

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. The defendant was involved in some of the most violent assaults on law enforcement officers that occurred on January 6, 2021. He is facing multiple counts of violating 18 U.S.C. 111(a)(1) and (b) and 18 U.S.C. 231(a)(3), which are serious felony offenses. He showed up to the U.S. Capitol wearing a helmet, ready for a fight, and indeed ran to the front lines of the "battle." Sabol stole the baton from an officer who had already been attacked and knocked to the ground by one of Sabol's fellow rioters. Not content with merely robbing Officer A.W. of one of his few

12

means of protection, Sabol proceeded to use that stolen baton to assault another officer, Officer B.M., who was being dragged out into the violent crowd by the head. The defendant claims he was patting Officer B.M. on the back and saying "we got you." What the objective BWC clearly shows is that the defendant had a baton to the back of Officer B.M.'s neck, and another hand on Officer B.M.'s back as he and others dragged Officer B.M., face down into the crowd, away from the outstretched arms of Officer B.M.'s colleagues who were trying to help Officer B.M.

As Chief Judge Howell has noted, "Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *United States v. William Chrestman*, 21-mj-218 (ZMF), ECF No. 23, at 16. Here, the defendant did not just confront or threaten law enforcement officers, he assaulted them and impeded their ability to do their jobs. The two officers that were dragged into the crowd could have easily been seriously injured, if not killed, as a result of the defendant's actions. Officer A.W. did in fact have to receive staples to his head to close the laceration he sustained during the cumulative assaults he endured on January 6, 2021. Moreover, the defendant's assault of Officers A.W. and B.M. interfered with officers' ability to come to the aid of a protestor who had been trampled by the crowd, and subsequently died from her injuries.

During the defendant's post-arrest interview, he clearly articulated that he attended former President Trump's rally earlier that day, and that he joined the thousands of individuals who

13

descended on the U.S. Capitol to protest the election results. He then acted on his beliefs that the 2020 election was fraudulent, and engaged in multiple violent assaults – one with a dangerous weapon – on the law enforcement officers trying to protect Congress's certification of the 2020 Presidential election. As a result, the nature and circumstances of these offenses overwhelmingly weigh in favor of detention.

## 2. Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As discussed above, the evidence against the defendant includes BWC from numerous different officers and social media video footage. The video evidence is objective and unwavering. The BWC corroborates the assaults seen in the video posted by Storyful, and shows precisely how Sabol stole Officer A.W.'s baton, and then dragged Officer B.M. into the violent crowd. Moreover, cellular phone records corroborate the defendant's presence near the U.S. Capitol.

In addition, the physical evidence recovered from the vehicle the defendant was driving, and his own words, corroborate his involvement in the assaults. Law enforcement recovered the defendant's green backpack and tan Carhartt jacket that he was seen wearing when he assaulted Officers B.M. and A.W. The defendant identified himself in video footage, and in Exhibit 4, which shows him looming over Officer B.M. with a baton to Officer B.M.'s neck and his hand on Officer B.M.'s backside. The defendant acknowledged that he took the baton of an officer who was laying on the ground, and made self-serving statements that he was trying to help officers. The video footage shows that is clearly not the case. The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

14

### 3. Defendant's History and Characteristics

The government recognizes the defendant's lack of criminal history and that many letters of support have been filed on his behalf. However, the defendant's actions, as demonstrated by his apparent willingness to prepare for and then engage in what he perceived to be a battle, weigh against his release. The defendant's perceived battle involved assaulting law enforcement officers who were ensuring that Congress was able complete its official business – certifying the 2020 Presidential Election. The defendant did not believe that the election was valid, and his actions demonstrate that he was willing to engage in violent behavior in response to perceived irregularities in the election. Moreover, the defendant's conduct after the events of January 6th show he succeeded in destroying evidence and asked others to delete incriminating videos he made. The defendant acknowledged deleting text messages and communications, microwaving his electronic devices, and throwing his phone off of a bridge. If released, the defendant would have even more opportunities to unleash violence against those in "battle" against him, and to destroy evidence and obstruct the proceedings against him.

### 4. Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy. The defendant used physical force against two separate officers who were dragged into a violent mob. And he did so at a time that individuals in a crowd were calling for

15

the police to help them tend to a protestor who subsequently lost her life after being crushed by the mob. The danger the defendant poses cannot be understated.

In addition to the continuing danger that he poses to the community, the defendant is a flight risk. The defendant already attempted to flee to a country that he believed would not extradite him. When that proved unsuccessful, he attempted to kill himself. He now faces a significant term of imprisonment in the face of overwhelming evidence against him. The defendant has acted on attempts to flee, and now, in light of the evidence and charges against him, he has an even more compelling incentive to flee.

## **CONCLUSION**

The defendant came to the U.S. Capitol equipped for a battle and he sought out an opportunity to join that battle. Convinced that the 2020 Presidential Election was fraudulent, he waged his own personal war against members of law enforcement who were assisting in protecting the U.S. Capitol and Congress as it attempted to certify the 2020 election. The defendant assaulted two separate officers in one of the most violent moments of the day, and afterwards destroyed evidence of his crimes, and attempted to flee the country. An analysis of the factors under 18 U.S.C. § 3142(g) demonstrates that the Defendant should remain detained pending trial.

As a result, the government respectfully opposes the defendant's motion for pre-trial release.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

By:     */s/   Colleen D. Kukowski*
        COLLEEN D. KUKOWSKI
        Assistant United States Attorney
        DC Bar No. 1012458
        555 4th Street, N.W., Room 9842
        Washington, D.C. 20530
        (202) 252-2646
        Colleen.Kukowski@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

        */s/ Colleen D. Kukowski*
        COLLEEN D. KUKOWSKI
        Assistant United States Attorney

Date: March 9, 2021