# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL NO. 1:21-cr-35-EGS-1** |
| v. | : | |
| | : | |
| JEFFREY SABOL | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR
## PRE-TRIAL RELEASE FROM CUSTODY

On January 6, 2021, convinced that the 2020 Presidential Election was fraudulent, Jeffrey Sabol (the "Defendant") waged a more than two-hour long war against members of law enforcement who were protecting the U.S. Capitol and Congress. The evidence now shows that he first began assaulting law enforcement officers at 2:04 pm, and continued doing so until at least 4:27 pm, when he and his co-defendants dragged an officer off the police line and into a violent crowd. His actions that day contributed to U.S. Capitol Police and the Metropolitan Police Department being forced to retreat from the Capitol's West Plaza, up to the Lower West Terrace and to officers being assaulted and injured. Then, he destroyed evidence of his crimes, and attempted to flee the country.

On April 14, 2021, after conducting a thorough detention hearing and considering the parties' written submissions, video exhibits, and oral arguments, this Court ordered the Defendant detained pending trial pursuant to 18 U.S.C. § 3142, finding that there is clear and convincing evidence that no conditions or combination of conditions of release can assure the safety of the community and, by a preponderance of the evidence, that no condition or combination of

conditions will reasonably assure the Defendant's appearance as required if he were to be released pending trial.  *See* Memorandum Opinion, ECF No. 56 at 64.

On August 23, 2021, the Defendant filed a motion for his release from pretrial detention. *See* Defendant Jeffrey Sabol's Memorandum in Support of Motion for Pre-Trial Release from Custody ("Defendant's Motion"), ECF No. 102.   In his Motion, the Defendant claims the Government went to "great lengths" to misrepresent facts, and relied on the actions of the defendant's co-defendants in order to detain the defendant; however, this Court was able to independently review the Government's evidence, weigh the evidence, and determine the defendant should be held.  The Defendant also claims to have new video evidence showing the Defendant waving off violence; however, the new evidence has no material bearing on the detention decision.  The Court should accordingly deny the defendant's motion.

<u>PROCEDURAL POSTURE</u>

On January 15, 2021, the defendant was charged by complaint with violating 18 U.S.C. § 231(a)(3), Civil Disorder.  The defendant was arrested on January 22, 2021, and had an initial appearance in the Southern District of New York the same day.  A detention hearing was also held on January 22, 2021, and Magistrate Judge Andrew E. Krause held the defendant because he was a "risk of flight/ danger." *See* Minute Entry, 7:21-mj-866-UA-1 (1/22/2021). The defendant was then transported to the District of Columbia area.

On January 29, 2021, the defendant was indicted, along with co-defendants Peter Francis Stager and Michael John Lopatic Sr, for their conduct on January 6, 2021.  *See* Indictment, ECF No. 8. The defendant is charged with one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1), (b); one count of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); two

2

counts of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Entering and

Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation

of 18 U.S.C. § 1752(a)(1), (b)(1)(A); one count of Disorderly and Disruptive Conduct in a

Restricted Building or Grounds With a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §

1752(a)(2), (b)(1)(A); one count of Engaging in Physical Violence in a Restricted Building or

Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A);

and one count of Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40

U.S.C. § 5104(e)(2)(F).

On March 12, 2021, the Grand Jury returned a Superseding indictment, which added two

additional co-defendants to the case. See Superseding Indictment, ECF No. 23.

On August 4, 2021, the Grand Jury returned a Second Superseding indictment in the

defendant's case. *See* Second Superseding Indictment, ECF No. 92. The Second Superseding

indictment added both new co-defendants to the case (totaling 7 co-defendants) and new charged

for the defendant.  The defendant is now charged with  Obstruction of an Official Proceeding and

Aiding and Abetting, 18 U.S.C. § 1512(c)(2), 2 (Count 1); Assaulting, Resisting, or Impeding

Certain Officers or Employees (with a Dangerous Weapon) 18 U.S.C. §  111(a)(1) and (b), 2

(Count 2); Assaulting, Resisting, or Impeding Certain Officers or Employees, 18 U.S.C. §

111(a)(1) (Counts 5, 13, and 14), Robbery in a Federal Enclave, 18 U.S.C. § 2111 (Count 6); Civil

Disorder, 18 U.S.C. § 231(a)(3) (Counts 8, 9, and 15); Entering and Remaining in a Restricted

Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(1), (b)(1)(A)

(Count 16); Disorderly and Disruptive Conduct in a Restricted Building or Grounds With a Deadly

or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A) (Count 17); Engaging in

Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon 18

3

U.S.C. § 1752(a)(4), (b)(1)(A) (Count 18); and Act of Physical Violence in the Capitol Grounds or Building, 40 U.S.C. § 5104(e)(2)(F) (Count 22).

## NEW EVIDENCE AGAINST THE DEFENDANT

In support of its opposition, the government incorporates the facts as stated in its previous Opposition to Defendant Motion for Pre-Trial Release filed on March 9, 2021, ECF No. 20.

New evidence gathered in this case shows that the defendant's violent conduct didn't start at 4:27 pm; rather, it began over two hours earlier.  At 2:00 pm, rioters had arrived at the West Plaza of the Capitol (an area on the ground level of the Capitol Grounds, below the Lower West Terrace), however U.S. Capitol Police ("USCP") and Metropolitan Police Department ("MPD") officers had formed a police line with barricades to keep the rioters from ascending to the Capitol, as shown in the still from USCP surveillance below.

*Exhibit 1*



4

The defendant was in the vanguard of rioters that first started clashing with police at the West Plaza. At approximately 2:04, on the West Plaza of the Capitol, the Defendant charged at the police line with his fellow rioters.  In particular, the Defendant and another individual pushed Jonathan Pollock (separately indicted), who was holding a riot shield, up a set of steps so that he slammed into a line of officers.  The Defendant then continued to push at the line, slamming into a shield held by MPD Officer M.T., and, it appears, the USCP officer standing next to her. Notably, at least one (unidentified) MPD officer was pulled out into the crowd during the assault. This assault is captured in Exhibit 2.  The video shows the Defendant (in the teal backpack next to man in blue) propels another individual (defendant Pollock) towards police line.  The Defendant then continues to push into the line of officers, until he is pushed backwards down the steps.

Exhibit 3 Officer M.T.'s BWC, shows that Sabol slammed into Officer M.T.'s riot shield as he charged the police line, head first.  The screenshot below is from Officer M.T's BWC:

*Exhibit 3.1*



Additionally, Exhibit 4, Officer J.M.'s BWC, shows another angle of Sabol slamming into the police line.  The screenshot below is from Officer's J.M.'s BWC:

*Exhibit 4.1*



After this assault, the Defendant remained at the police line on the West Plaza, and continued to physically engage with law enforcement.  At approximately 2:27, the Defendant again

6

charged into a line of police officers on the West Plaza of the Capitol.  This charging at the police line is captured on Officer H.F's BWC.  *See* Exhibit 5 – Officer H.F.'s BWC.  Sabol and others charge at the police line, which used shields to repel the rioters.  Sabol, who is a rugby player, charges at the officers as though he is entering a rugby scrum.  The screenshot below is from Officer's H.F.'s BWC:

*Exhibit 5.1*



By 2:30 p.m., rioters had engulfed the West Plaza of the Capitol and officers had begun retreating from the first landing of the Lower West Terrace, as shown in the still from USCP surveillance below:

*Exhibit 6*



As the officers began to proceed up to the West Terrace, a number of them remained on the ground level of the West Plaza, attempting to hold back the encroaching rioters. The defendant was amongst the encroaching rioters, and he continued to physically engage with law enforcement. At approximately 2:33, the Defendant (along with defendants Pollock and Robert Morss, who is also separately charged) grabbed at and engaged in a tug of war over a MPD officer's helmet visor. The officer ultimately held on to the visor, however Officer H.F.'s BWC shows Sabol with both hands on the visor, attempting to pull the visor away from the officers. *See* Exhibit 7 – Officer H.F's BWC. Similarly, Officer M.T.'s BWC also shows Sabol reaching for the visor. The screenshot below is from Officer's M.T.'s BWC:

*Exhibit 8*



The government's new evidence shows that the Defendant made his way to the tunnel at the Lower West Terrace by approximately 2:54 pm.  He remained at the Lower West Terrace until 4:27 – 4:29 p.m., when he robbed Officer A.W. of his baton and joined in the group dragging Officer B.M. out into the crowd.

## **ARGUMENT**

The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014).  In other words, the statute requires that a movant provide information that is both "new" and "material."  *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

9

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

The only information that the defendant proffers that is new is the evidence of him helping a fellow rioter. See Defendant Mot. 17, 31. But the defendant's later attempt to render aid to a rioter in medical distress does not mitigate his eager entry into and participation in the violent assault of several police officers. And, the rest of the defendant's motion seeks to relitigate issues already decided by this Court. For example, the defendant repeats his claims that videos show him waving his hands in a way "clearly demonstrating that he was calling off any violence or assaults." But he also acknowledges that this evidence was submitted at his initial detention hearing. *See* Defendant Mot. at 12. This previously reviewed evidence thus should not be a basis for reopening the detention hearing, and re-litigating an issue this Court has already decided. *S*ee e.g. Memorandum Opinion, ECF No. 56, at 41 – 42 ("The second video does depict Mr. Sabol waving his hands horizontally, as Mr. Sabol argues, but there are no discernable statements made by Mr. Sabol in the video that reveal what this gesture meant in the context of the mob attacks on law enforcement."). But even if the Court assumes *arguendo* that all the allegations in the defendant's current motion were unknown to him on April 8, 2021, he has not established that the information

10

he proffered "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community," as required to reopen the detention hearing.  *See* 18 U.S.C. § 3142(f)(1).  Finally, even if the Court decides to reopen the detention hearing, it should deny the defendant's motion on the merits.

1. **Analysis of the Bail Reform Act Factors Shows the Defendant Should Remain Detained**

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure community safety or the defendant's appearance at trial and pre-trial proceedings:  (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *see United States v. Bikundi*, 47 F. Supp. 3d 131, 133 (D.D.C. 2014); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 & n.1 (D.D.C. 2013).

a. **Nature and Circumstances of the Offense Charged**

The Court previously analyzed the nature and circumstances of the offense charged, looking to the Chief Judge's guideposts laid out in *United States v. Chrestman*, 2021 WL 765662 (D.D.C. February 26, 2021)).  See Memorandum Opinion, ECF 56, at 28.  The first guidepost is whether the defendant  has been charged with felony or misdemeanor offenses.  The Court previously found that the defendant was charged with multiple felonies.  *Id*. at 29.  In the superseding indictment, he was charged was five additional felonies.  The next guidepost is

whether the defendant engaged in prior planning.  The Court examined this guidepost, and found that the defendant's assaultive conduct and civil disorder did not merely arise "in the context of a hysterical throng," *Id*, and that he instead came to Washington, D.C. with "the intention of causing mayhem and disrupting the democratic process, mandated under the U.S. Constitution, of counting and certifying Electoral College votes." *Id*. at 30 -31 (citing  Chrestman, 2021 WL 765662, at *8 (citing U.S. Const. art. II, § 1, cl. 3). The defendant offers no new evidence to disprove the government's evidence of his prior planning.  Instead, he tries to take a second bite of the apple, and argues that the Court "incorrectly found this evidence to be in favor of detention."  Defendant Mot. at 11.  The Bail Reform Act allows for a detention hearing to be reopened because of new, material evidence – not because the defendant the Court got it wrong.  This second guidepost continues to weigh in favor of the Defendant's detention.

With the third guidepost, whether the defendant carried or used a dangerous weapon during the riot, the defendant simply claims that the defendant's use of a baton – that he *stole* from an officer who was laying on the ground after being assaulted – is neutral.  Defendant Motion at 12.  As with the prior factor, the defendant is trying to reargue an issue already determined by the Court.  He offers new evidence to question the fact that he stole Officer A.W.'s baton and used in dragging Officer B.M. out into the crowd.  As this court previously found, "Mr. Sabol's willingness to strip a vulnerable law enforcement officer of his weapon so he could use it to forcibly push another officer into a violent mob speaks to the gravity of the offenses with which he has been charged as well as the danger he poses not just to his community, but to the American public as a whole."  Memorandum Opinion, ECF No. 56, at 35.

The defendant then claims that with respect to the fourth and fifth guideposts, whether the defendant coordinated with other participants or assumed a formal or de facto leadership position, the defendant claims that he did not coordinate with his codefendants, who he did not know prior to the day, and he held no leadership position.   While the Court previously found that these two issues were not an issue in the case, the government's new evidence shows that he was part of a leading group of rioters that pushed the police line back from the Western Plaza up to the Lower West Terrace.   This arguably involved spontaneous coordination with his fellow rioters, and showed that he assumed a leadership position in the moment. This evidence weighs in favor of his detention.

Finally, the nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot," still supports his detention.   The government's new evidence shows that the defendant waged a violent battle against law enforcement for over two hours. The fact that he helped a fellow rioter who was in need of aid does little to vitiate his sustained assaults on others whom he perceived to be fighting against him.   This factor thus continues to support his detention.

### b.  Weight of the Evidence Against the Defendant

The defendant's "new evidence" does nothing to detract from the original evidence.   The fact that others were involved in the assaults does not diffuse the strength of the evidence against the defendant.   And, the government's new evidence solidifies the evidence of Sabol's corrupt intent, and shows that his assaults at the LWT were not a momentary aberration.

13

### c. Defendant's History and Characteristics

The government recognizes the defendant's lack of criminal history and that many letters of support have been filed on his behalf.  However, the defendant's actions, as demonstrated by his apparent willingness to prepare for and then engage in what he perceived to be a battle, weigh against his release.  The defendant's perceived battle involved assaulting law enforcement officers who were ensuring that Congress was able complete its official business – certifying the 2020 Presidential Election.  The defendant did not believe that the election was valid, and his actions demonstrate that he was willing to engage in violent behavior in response to perceived irregularities in the election.  Moreover, the defendant's conduct after the events of January 6th show he succeeded in destroying evidence and asked others to delete incriminating videos he made.  The defendant acknowledged deleting text messages and communications, microwaving his electronic devices, and throwing his phone off of a bridge.  If released, the defendant would have even more opportunities to unleash violence against those in "battle" against him, and to destroy evidence and obstruct the proceedings against him.

### d. Danger to the Community and Flight Risk

As with before, the fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy.  The defendant used physical force against many officers over the course of two hours.   The danger the defendant poses cannot be understated.  In addition to the continuing danger that he poses to the community, the defendant is a flight risk. The

defendant already attempted to flee to a country that he believed would not extradite him.  When that proved unsuccessful, he attempted to kill himself.  He now faces a significant term of imprisonment in the face of overwhelming evidence against him.  The defendant has acted on attempts to flee, and now, in light of the evidence and even more charges against him, he has an even more compelling incentive to flee.

**2.**  <u>The Defendant has not Demonstrated that the Conditions at the Department of Corrections Justify his Release.</u>

    **a.**  <u>The Defendant's Complaints about Access to Discovery and Counsel at the Jail Are Not a Basis for Release.</u>

The Defendant's claims regarding access to discovery and counsel do not establish that he is entitled to the relief he seeks.  The Defendants claims that the conditions at the jail make it difficult for him to access to the voluminous discovery provided by the government in this case to date.  *See* Defendant's Mot. at 34-35.  For these reasons, among others, the Defendant asserts that he should be released.  To be sure, the defendant is entitled to reasonable access to discovery and the opportunity to meaningfully confer with counsel.  But the defendant cites no authority suggesting that his complaints justify reopening the detention hearing and ordering his release.  Indeed, the concerns raised by the defendant are entirely independent of the factors this Court must analyze in making a detention decision under the Bail Reform Act.

The Defendant also requests access to a laptop in his motion as an alternative to release.  Defendant's Mot. at 40 – 41. However, the Defendant's access to a laptop is immaterial to the question of whether he would pose a danger if released. He has also not proffered to the Court whether he attempted to take advantage of the program at the jail that allows for inmates to review voluminous discovery on a computer provided by the jail and, if so, why he claims it is not sufficient to allow him to review discovery.

15

On March 30, 2020, a civil complaint was filed in the United States District Court for the District of Columbia, on behalf of defendants detained at the Central Detention Facility and Central Treatment Facility (CTF), alleging that by the D.C. Department of Corrections (DOC) was failing to take reasonable precautions to prevent the spread and severity of a COVID-19 outbreak. That case, *Banks v. Booth* (20-cv-849), was assigned to Judge Kollar-Kotelly, who on April 19, 2020 issued a temporary restraining order (ECF No. 48), and on June 18, 2020, issued a preliminary injunction (ECF No. 100) that addressed, in part inmates' access to confidential legal calls in light of enhanced restrictions in place to address the pandemic, and ordered DOC to ensure that all inmates have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters, and to "swiftly implement to use of such technology" necessary to accomplish this (ECF No. 100 at 39).

On December 12, 2020, *amici* filed a report to provide information to the Court regarding DOC's compliance with the Court's June 18, 2020, preliminary injunction (ECF No. 138).  That report noted that the DOC had purchased significant amounts of new technology to facilitate attorney client communications, including through the use of cell phones from within their cells; and that the DOC facilitated more than 1500 such calls each month.  The report also noted that DOC had purchased a number of tablets that inmates were permitted to use to review discovery and to communicate with their attorneys using secure messaging (ECF No. 139 at 42).  Finally, the report noted that the DOC facilitated 1,209 videoconferences between attorneys and their clients between May and October 2020 (*Id.* at 40-41).[1]

---

[1] On July 6, 2021, the D.C Circuit Court of Appeals found that the preliminary injunction had expired.

On March 15, 2021, DOC issued a new procedure for voluminous electronic discovery, attached hereto as Exhibit 9.  The policy would allow him to review electronic materials in his cell on a laptop provided by DOC.  The government's position is that this procedure satisfies the requirements of the Protective Order regarding discovery in this case, so it would not limit the defendant's access to sensitive materials.  The defendant cites to issues he has had in receiving a thumb drive that was sent by his prior counsel, Defendant Mot. at 34-35, but he does not indicate whether the package was sent in accordance with the voluminous electronic evidence program outlined in Exhibit _9, and makes no mention of whether there were any subsequent attempts to send the defendant discovery (including after the government's July and August discovery productions).  Thus there is no basis to find that the program already in place at the jail is inadequate to allow him to review discovery.

    **b.**  <u>The Defendant's Complaints about Mistreatment at the Jail Are Not a Basis for Release</u>

The defendant similarly cites no authority—and the government is not aware of any—standing for the proposition that restrictive housing or any of the other conditions at the jail raised by the defendant entitle him to release under the Bail Reform Act, which is the relief he seeks in this motion.  He instead seeks his outright release, citing to the 8th Amendment.  Yet the information he proffers does not meet the standard set out in the Bail Reform Act, whether to reopen the hearing or to support a decision to release the defendant on the merits.

To be clear, the government is committed to ensuring the safety all of inmates, regardless of their detention status.  But it is also critical, from the government's perspective, to allow the issues to be properly litigated in their proper course.  Civil litigation is the proper venue to address complaints of mistreatment by the jail. *See United States v. Brooks*, 2020 U.S. Dist. LEXIS

230323, at *10 (D.D.C. Dec. 7, 2020) ("As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred."); *United States v. Smith*, 2020 U.S. Dist. LEXIS 213050, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases); s*ee, also, e.g., United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court").

The proper way to raise such a claim is to file a civil suit against the Department of Corrections or its warden. *See, e.g., United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *Campbell v. McGruder*, 416 F. Supp. 100, 101 (D.D.C. 1975) (addressing "class action brought by unconvicted pre-trial detainees incarcerated at the District of Columbia jail"). Here, as discussed above, the Bail Reform factors,

even taking into consideration the circumstances of COVID-19 and this defendant, remain in favor of detention.

**c.** <u>Defendant Has Not Established a Constitutional Violation as a Result of Other Defendants' Release.</u>

Finally, the defendant claims that that his pre-trial detention amounts to a violation of his rights under the Equal Protection Clauses of the Constitution.  *See* Defendant's Mot. at 40.  The defendant points to several cases, Mot. at 39 - 40, where other defendants in various types of cases from across the country have been granted bail.  He claims, without citation, that the Court's decision to detain him pretrial in this case, in light of these others, amounts to a denial of his rights under the Due Process and Equal Protection Clauses of the Constitution.  *See id.* at 40.

Many of the cases the defendant cites were available to him at the time of the initial litigation over his detention.  Setting that aside, he has not argued, let alone demonstrated, that the cherry-picked examples he offers would have materially altered the Court's analysis. As noted above, this Court must make an individualized decision as to the defendant's dangerousness, based on the factors laid out in 18 U.S.C. § 3142.  That is exactly what the Court did in April.  Moreover, none of the cases cited by the defendant are apples-to-apples comparisons to the defendant's case. The defendant has, in short, not demonstrated an Equal Protection violation with regard to his detention status.

## **CONCLUSION**

The defendant has not proffered any new facts that would materially alter this Court's decision to detain the defendant, following a thorough hearing in April 2021.  For the foregoing reasons, and any as may be cited at a hearing on this motion, the defendant's motion should be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

By:    */s/ Colleen D. Kukowski*
       Colleen D. Kukowski
       DC Bar No. 1012458
       Benet J. Kearney
       NY Bar No. 4774048
       Assistant United States Attorneys
       555 4th Street, N.W.
       Washington, D.C. 20530
       (202) 252-2646 / (212) 637 2260
       Colleen.Kukowski@usdoj.gov /
       Benet.Kearney@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Opposition to Defendant's Motion for Pre-Trial Release From Custody was served on all counsel of record via the Court's electronic filing service.


 */s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney


Date: September 17, 2021