**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

JEFFREY SABOL,

                    Defendant.

Crim. Action No. 21-35-1(EGS)

**MEMORANDUM OPINION AND ORDER**[1]

## I.   Background

Pending before the Court is Mr. Sabol's Motion for Bond Reconsideration. *See* ECF No. 102. On April 14, 2021, the Court denied a motion for pretrial release filed by Mr. Sabol, who has been charged in a federal indictment with fourteen serious offenses arising from his participation in the events at the U.S. Capitol on January 6, 2021. *See* Memorandum Opinion ("Mem. Op."), ECF No. 56; Indictment, ECF No. 154. The Court ordered that Mr. Sabol be detained pending trial after finding by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community were he to be released pending trial; and by a preponderance of the evidence that no condition or combination of conditions would reasonably assure his appearance

─────────────────

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

as required if he were released. *See* Mem. Op, ECF No. 56 at 64. Mr. Sabol now seeks reconsideration of his release.

Mr. Sabol's motion presents two primary questions for the Court to consider. First, whether Mr. Sabol has presented new information that would warrant reconsideration. Second, whether any such new information has a material bearing on the Court's consideration of whether any condition or combination of conditions will assure his appearance and required and the safety of any other person or the community. The Court finds that Mr. Sabol has presented some new information, including some video evidence from January 6. However, the Court concludes that none of the new information supports a different outcome with respect to Mr. Sabol's detention.

## II.  Legal Standard

A detention hearing may be reopened and the Court may reconsider a detention decision if the Court finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). "New" information is "material" if it is "essential to, or capable of significantly affecting, the detention decision."

2

*United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021). "[T]he relevant inquiry is whether the new and material information changes the Court's analysis as to whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. Mar. 26, 2021) (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)).

In determining whether there are conditions of release that will reasonably assure a defendant's appearance as required and the safety of any other person and the community, the Court considers the following factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). The inquiry is an individualized one, and the Court must determine that the defendant's history, characteristics, and alleged criminal conduct "make *clear* that he or she poses a *concrete, prospective* threat to public safety." *Munchel*, 991 F.3d at 1280. When seeking a defendant's pretrial detention, the government is required to demonstrate the appropriateness of detention based on a defendant's flight risk by a preponderance of the evidence, and demonstrate the

3

appropriateness of detention based on a defendant's danger to the community by clear and convincing evidence. *See* 18 U.S.C. § 3142(f).

## III. Analysis

### A. The Relevant Factors Weigh in Favor of Continued Pretrial Detention

#### 1. The Nature and Circumstances of the Offense Charged Support Pretrial Detention

The first factor the Court must consider is the nature and circumstances of the offense charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). The Court must "adequately demonstrate that it considered whether [Mr. Sabol] pose[s] an articulable threat to the community in view of [his] conduct on January 6, and the particular circumstances of January 6." *Munchel*, 991 F.3d at 1283. When assessing this factor in pretrial detention motions in Capitol Riot cases, judges in this district have analyzed defendants' conduct using the six-factor framework Chief Judge Howell set out in *United States v. Chrestman*, 525 F. Supp. 3d 14, 26-27 (D.D.C. 2021). The factors include: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant assumed a formal or de facto

4

leadership role in the events of January 6, 2021, for example "by encouraging other rioters' misconduct" "to confront law enforcement"; and (6) the defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." *Id.* These factors "offer a useful framework through which to contextualize the nature and circumstances of offenses committed at the U.S. Capitol on January 6, 2021," and "the comparative severity of defendant's alleged conduct is assessed against this backdrop." *Id.* at 27.

### a. Type of Offense

As to the first *Chrestman* factor, whether a defendant has been charged with felony or misdemeanor offenses, Mr. Sabol concedes that this factor weighs heavily in favor of detention. *See* Def. Jeffrey Sabol's Mem. in Supp. of Mot. for Pre-Trial Release from Custody ("Def.'s Mot."), ECF No. 102 at 10. The Court therefore need not analyze this factor further.

### b. Extent of Prior Planning

The second *Chrestman* factor—the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear," *Chrestman*, 525 F. Supp. 3d at 26—also continues to weigh in favor of pretrial detention. Mr. Sabol argues that the Court

"incorrectly found [the government's] evidence to be in favor of detention." Def.'s Mot., ECF No. 102 at 11. The government responds–and the Court agrees–that the Bail Reform Act allows for a detention hearing to be reopened because of new, material evidence, and not because the defendant believes the Court got it wrong. *See* Gov't's Opp'n to Def.'s Mot. for Pre-Trial Release from Custody ("Gov't's Opp'n"), ECF No. 119 at 12. Here, Mr. Sabol presents no new evidence. Mr. Sabol first argues that the tactical gear that he brought and carried with him on January 6 does not show prior planning. Def.'s Mot., ECF No. at 11. The Court previously properly concluded otherwise. *See* Mem. Op., ECF No. 56 at 30-31. He brought a helmet, steel toed boots, zip ties, a radio and an earpiece to the Capitol. *See id.* Even if he did not use the zip ties, which the Court never contended that he did and which Mr. Sabol now addresses with photo evidence, he still engaged in prior planning simply by bringing those items with him.

Mr. Sabol next contends that evidence allegedly shows that he was waiving other rioters off of Metropolitan Police Department ("MPD") officers who had been dragged into the mob. Def.'s Mot., ECF No. 102 at 12. The Court reviewed this video evidence and wrote that it "does depict Mr. Sabol waving his hands horizontally, as Mr. Sabol argues, but there are no discernable statements made by Mr. Sabol in the video that

reveal what this gesture meant in the context of the mob attacks on law enforcement." Mem. Op., ECF No. 56 at 41- 42.

The Court need not consider Mr. Sabol's remaining arguments, which serve only to challenge the Court's prior decision instead of presenting new evidence. *See* Def.'s Mot., ECF No. 102 at 12. The Court stands by its previous finding that Mr. Sabol's amount of prior planning and intentionality "suggests that he was not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of causing mayhem and disrupting the democratic process. . .." *Chrestman*, 525 F. Supp. 3d at 26.

### c. Use of a Dangerous Weapon

The third *Chrestman* factor—whether the defendant carried or used a dangerous weapon, *see Chrestman*, 525 F. Supp. 3d at 26— also weighs in favor of continued detention. Mr. Sabol argues that the fact that he stole an MPD Officers police baton should not weigh in favor of detention because it occurred in a matter of seconds and the baton was not used to strike an officer. Def.'s Mot., ECF No. 102 at 13. The Court considered this factor and the evidence of Mr. Sabol not having a baton before arriving at the Western Terrace. Mem. Op., ECF No. 56 at 33-34. The Court also considered that the images are not clear as to whether the baton was used against the prone officer aggressively against the back of his neck or as protection. *Id.* at 34. The Court

concluded that the stealing and wielding of the baton was enough to weigh in favor of detention under the *Chrestman* weapons factor. *Id.* at 35. In the absence of new evidence, the Court's opinion remains unchanged. As the Court previously found, "Mr. Sabol's willingness to strip a vulnerable law enforcement officer of his weapon so he could use it to forcibly push another officer into a violent mob speaks to the gravity of the offenses with which he has been charged as well as the danger he poses not just to his community, but to the American public as a whole." *Id.* at 35.

### d. Evidence of Coordination and Assumption of Leadership

The fourth *Chrestman* factor is evidence of coordination with other protestors before, during, or after the riot, while the fifth *Chrestman* factor assesses whether the defendant assumed a formal or de facto leadership role in the events of January 6, 2021. *See Chrestman*, 525 F. Supp. 3d at 26-27. Both factors now weigh in favor of continued pretrial detention.

Mr. Sabol claims that he did not coordinate with his codefendants, who he did not know prior to the day, and that he held no leadership position. Def.'s Mot., ECF No. 102 at 15. The government responds that its new evidence shows that Mr. Sabol coordinated with other rioters and took a leadership role in the

earlier events on January 6 by pushing rioters and himself into the police line. Gov't's Opp'n, ECF No. 119 at 13.

While the Court previously found that these two factors were not an issue in the case, in light of the government's new evidence, the Court now concludes that these two factors weigh in favor of pretrial detention. The government's new evidence shows that Mr. Sabol was part of a leading group of rioters that pushed the police line back from the Western Plaza up to the Lower West Terrace. *See* Exhibits 1-4, ECF No. 119. The evidence further shows that Mr. Sabol spent more than two hours engaging in this type of conduct. *Id.* Even if Mr. Sabol's actions were spontaneous in the beginning, their continuation for two hours cannot be described as anything but a choice and a commitment to a violent course of action against officers of the state. Thus, the Court now finds that these factors weigh in favor of detention.

### e. Mr. Sabol's Words and Movements

Finally, the sixth *Chrestman* factor—defendant's words and movements during the riot, *see Chrestman*, 525 F. Supp. 3d at 27— strongly supports continued detention. Mr. Sabol contends that he did not damage property or "promote[] or celebrate[] any efforts to disrupt the certification of the electoral vote count." Def.'s Mot., ECF No. 102 at 16. This argument does not discuss any new information; it merely raises information the

Court has already considered about Mr. Sabol's actions. *See* Mem. Op., ECF No. 56 at 36. That Mr. Sabol did not engage in *all* possible types of destructive and criminal conduct on January 6 does not negate the violent and assaultive conduct he did engage in.

Mr. Sabol does, however, present several pieces of new video evidence in favor of his argument that his "words and movements" weigh neutrally in deciding detention or release. Mr. Sabol points to evidence purportedly showing he was not hitting the officer who he helped drag into the crowd: he contends that the image of him with his hand on the back of Officer B.M.'s neck was taken at the top of the western terrace steps and not the bottom and does not show him hitting the officer. *See* Exhibit I, ECF No. 102. Mr. Sabol also highlights video evidence purportedly showing him attempting to assist an injured rioter. *See* Exhibit K, 13:20-14:20, ECF No. 102; Exhibit L, 23:02-24:37, *id.* Finally, Mr. Sabol emphasizes video evidence ostensibly showing him "waiving off" violence against Officer B.M. as he was laying on the ground. *See* Exhibits G, H, ECF No. 102. The government responds that the video evidence does not provide any additional insight into Mr. Sabol's actions that refutes the violent and assaultive nature of the incident, and that Mr. Sabol's later attempts to help an injured person do not mitigate

his violent and assaultive conduct. Gov't's Opp'n, ECF No. 119 at 13. The Court agrees.

As the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has stated, "those [rioters] who actually assaulted police officers and . . . those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Munchel*, 991 F.3d at 1284. Against Mr. Sabol's new evidence, the government's new evidence shows that he fought against law enforcement officers for over two hours. *See* Exhibits 1-4, ECF No. 119. Mr. Sabol's actions demonstrate a clear contempt for the rule of law and law enforcement and a willingness to engage in violence. *See* Exhibit 3.1, 4.1, *id.* The fact that he helped a fellow rioter does not diminish his sustained assaults on officers of the law. To the contrary, "[g]rave concerns" are implicated where, as here, "a defendant actively threatened or confronted federal officials or law enforcement" because such conduct demonstrates "disregard for the institutions of government and the rule of law[.]". *Chrestman*, 525 F. Supp. 3d at 27. For these reasons, the nature and circumstances of the offense weigh heavily in favor of detention on the basis that no condition or combination of

conditions will reasonably assure the safety of the community.
18 U.S.C. § 3142(e)(1), (g)(1).

### 2. **The Weight of the Evidence Supports Pretrial Detention**

The second factor the Court must consider is the weight of
the evidence against Mr. Sabol. 18 U.S.C. § 3142(g)(2). In
consideration of the strength of the government's evidence
against Mr. Sabol, the Court finds that the second 18 U.S.C.
§ 3142(g) factor weighs in favor of his continued pretrial
detention, although it "is the least important" factor. *United
States v. Padilla*, 2021 WL 1751054, at *7 (D.D.C. May 4, 2021)
(quoting *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th
Cir. 1991)).

Mr. Sabol argues the same points here concerning the new
evidence of his assistance to an injured rioter, the lack of
aggression used when holding the baton to the downed officer's
neck, and the possibility that he is waiving off other rioters
from attacking the downed officer based on video evidence. *See*
Def.'s Mot., ECF No. 102 at 19-21. The government argues that
the weight of the evidence against Mr. Sabol remains strong, and
the new evidence "does nothing to detract from the original
evidence." Gov't's Opp'n, ECF No. 119 at 13. The Court concludes
that the government has offered enough evidence of the offenses
for this factor to weigh against Mr. Sabol.

The Court has already addressed the new evidence provided by Mr. Sabol. Mr. Sabol himself admits the strength of the evidence against him with respect to certain offenses. *See* Def.'s Mot., ECF No. 102 at 21. The fact that Mr. Sabol's co-defendants assaulted police officers, *see id.* at 20; does nothing to change Mr. Sabol's own actions, which are judged independently.

### 3. Mr. Sabol's History and Characteristics Weigh in Favor of Pretrial Detention

Under the third factor, the Court must consider Mr. Sabol's history and characteristics. 18 U.S.C. § 3142(g)(3). The Court considers Mr. Sabol's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," *id.* § 3142(g)(3)(A); and "whether, at the time of the current offense or arrest, [Mr. Sabol] was on probation, on parole, or on other release," *id.* § 3142(g)(3)(B).

There is no discernible "new evidence" related to Mr. Sabol's history and characteristics, and both he and the government only discuss information that was squarely addressed in the Court's prior decision. *Compare* Def.'s Mot., ECF No. 102 at 23-25; Gov't's Opp'n, ECF No. 119 at 14 *with* Mem. Op., ECF

No. 56 at 47. In sum, Mr. Sabol points out that he has no criminal history and has never engaged in violence outside of the January 6 incident. Def.'s Mot., ECF No. 102 at 26. The government, on the other hand, points out that Mr. Sabol was willing to "engage in what he perceived to be a battle," assault police officers, and disrupt the certification of the election. Gov't's Opp'n, ECF No. 119 at 14. Absent new evidence, the Court's analysis remains unchanged.

Despite Mr. Sabol's lack of criminal history, the Court remains troubled by his decisions on January 6, 2021, which "show that he is willing to allow his own personal beliefs to override the rule of law, which reflects poorly on his character." *United States v. Klein*, Crim. Act. No. 21-236 (JDB), 2021 WL 1377128, at *10 (D.D.C. Apr. 12, 2021) (quotation marks and citation omitted). As the Court has already observed, "[t]hat Mr. Sabol acted violently against law enforcement protecting the peaceful transition of power based on a belief that the 2020 Presidential Election was stolen is also very alarming [and] indeed raises concerns about [his] character and the danger [he] may present to the community if he were released." Mem. Op., ECF No. 56 at 49.

### 4. Mr. Sabol Poses a Risk to the Community

The final factor the Court must consider is the "nature and seriousness of the danger to any person or the community that

would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

For many of the reasons already addressed above, the Court finds

that this factor continues to weigh against Mr. Sabol and in

favor of his continued pretrial detention. "Consideration of

this factor encompasses much of the analysis set forth above,

but it is broader in scope," requiring an "open-ended assessment

of the 'seriousness' of the risk to public safety." *United

States v. Cua*, 2021 WL 918255, at *5 (D.D.C. Mar. 10, 2021)

(quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C.

2018)). "Because this factor substantially overlaps with the

ultimate question whether any conditions of release 'will

reasonably assure [the appearance of the person as required] and

the safety of any other person and the community,' 18 U.S.C. §

3142(e), it bears heavily on the Court's analysis." *Id.*

Mr. Sabol reiterates his act of assistance to an injured

protestor, his lack of aggression with the baton, and his

alleged attempts to waive off the mob and stop any violence.

Def.'s Mot., ECF No. 102 at 29-30. Calling the government's

prior representations misleading, Mr. Sabol also contends that

the evidence shows his actions had nothing to do with the death

of Ms. Boyland, another rioter. *See id.* at 31-32. Mr. Sabol

directs the Court's attention to the D.C. Circuit's decisions in

two cases: *U.S. v. Michael Joseph Foy*, and *United States of

America v. George Pierre Tanios*, which he states undermine the

Court's analysis and basis for finding that Mr. Sabol presents a future danger to the community. *Id.* at 27-28. Additionally, Mr. Sabol asserts that the government relied on the actions of other rioters when discussing Mr. Sabol's dangerousness. *Id.* at 30. The government counters that Mr. Sabol attempted to disrupt the certification of the election and used physical force against several officers. *See* Gov't's Opp'n, ECF No. 119 at 14-15. The Court's analysis of this factor remains unchanged.

As the Court has already stated, the nature and circumstances of Mr. Sabol's offenses evince a clear disregard for the safety of others. *See supra*; *see also Chrestman*, 525 F. Supp. 3d at 28. Mr. Sabol has presented no new information to change the Court's analysis as to his potential for danger to the community. To the contrary, new evidence shows that he was involved in nearly two hours of confrontations with officers at the Capitol. *See* Exhibits 1-4, ECF No. 119. His attempt to assist an injured rioter does not negate the other actions nor suggest that he is unlikely to engage in future violence if released. Further, even if Mr. Sabol's actions did not have anything to do with the death of Ms. Boyland, the Court's analysis was not reliant on that finding. *See* Mem. Op., ECF No. 56 at 62-63.

Likewise, Mr. Sabol's reference to D.C. Circuit decisions that post-date the Court's initial detention decision do not

require a different result. While the specific circumstances of
January 6 have passed, the Court has considered the more recent
D.C. Circuit decisions in post-Sabol decisions and has concluded
that the risk is not absent in view of the continued
inflammatory rhetoric coming from the former President and his
supporters concerning the validity of President Biden's election
victory. *See* Mem. Op., ECF No. 56 at 61 (stating that the threat
of further violence is "present, concrete, and continuing" and
providing references). The Court considered several factors,
including more than just Mr. Sabol's violent conduct on January
6, to conclude that Mr. Sabol presents a danger, and that
conclusion is not inconsistent with subsequent D.C. Circuit case
law. *See id.* at 63.

The Court is also aware that the government referenced Mr.
Sabol's codefendants when discussing the events that transpired.
However, the Court was able to differentiate Mr. Sabol's actions
from theirs in the prior hearing and decision. *See id.* The Court
need not do so again here, especially given its targeted focus
on new evidence, to conclude that the nature and circumstances
of Mr. Sabol's offenses are chilling, and he poses a potential
danger to the community if released.

With respect to Mr. Sabol's risk of flight specifically,
there is no new information that the Court has been presented
with. Mr. Sabol argues only that his attempt to flee to

17

Switzerland after he learned that the FBI was investigating him
for his involvement in the Capitol Riots is not sufficient to
satisfy the government's burden. Def.'s Mot., ECF No. 102 at 25.
He contends that without a passport or license, he will be
unable to flee and therefore can be released without fear that
he will attempt to evade prosecution. *Id.* He also argues that
his parents will sign a bond in the amount of $100,000 to ensure
he does not flee, and his partner will put her house up as
collateral. *Id.* The government responds that Mr. Sabol has
already attempted to flee to a country that he believed would
not extradite him, and now, in light of the evidence and more
charges against him, has an even more compelling incentive to
flee. Gov't's Opp'n, ECF No. 119 at 15. The Court agrees.

Mr. Sabol cites no cases where a defendant has attempted to
flee the country and was found to not be a flight risk. *See
generally* Def.'s Mot., ECF No. 102. As this Court has already
observed, Mr. Sabol traveled from Colorado to Boston to attempt
to board a flight to Switzerland and admitted he took this
action to evade prosecution. *See* Mem. Op., ECF No. 56 at 53. He
also attempted to, and succeeded in, destroying evidence,
including by microwaving electronic devices and tossing a cell
phone out of the window of his car after he fled the Boston
airport. *Id.* Mr. Sabol has presented no evidence that would

undermine the government's extremely strong showing that he poses a flight risk.

After considering the factors set forth in 18 U.S.C. § 3142(g), the Court finds, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Mr. Sabol to be released pending trial. 18 U.S.C. § 3142(e)(1). The Court further finds, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure Mr. Sabol's appearance as required were he to be released. *Id.* § 3142(g). Accordingly, Mr. Sabol's Motion for Bond Reconsideration, ECF No. 102, is **DENIED**. Mr. Sabol shall remain detained pending trial.

### B. Mr. Sabol's Detention Conditions Do Not Impact the Court's Analysis

Separately, Mr. Sabol raises concerns about the conditions at D.C. Jail, including his ability to access discovery materials. *See* Def.'s Mot., ECF No. 102 at 34. He contends that as of the date of his reply brief, he still had not had an opportunity to review discovery. *Id.* at 35. Mr. Sabol argues that his treatment in the D.C. Jail is a violation of his human rights, his sixth amendment right to assistance of counsel, and his eighth amendment right to not be subjected to cruel and unusual punishment. *Id.* at 34. The government responds that Mr.

Sabol's complaints about mistreatment do not provide a basis for relief, and do not meet the standard set out in the Bail Reform Act, whether to reopen the hearing or to support a decision to release the defendant on the merits. Gov't's Opp'n, ECF No. 119 at 15. The Court agrees.

As a threshold matter, a separate civil suit is the proper method to address complaints of mistreatment by the jail. *See United States v. Brooks*, 2020 U.S. Dist. LEXIS 230323, at *10 (D.D.C. Dec. 7, 2020) ("As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred."); *United States v. Smith*, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases); *see also, e.g., United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."). Mr. Sabol cites no authority suggesting that his complaints about restrictive housing and discovery challenges justify reopening the detention hearing and ordering his release under the Bail Reform Act.

Nonetheless, it bears observing that the Court is aware of, and concerned by, the conditions at D.C. Jail. Indeed, this

District has ordered the Department of Corrections to ensure
that all inmates have access to confidential, unmonitored legal
calls of a duration sufficient to discuss legal matters, and to
"swiftly implement" the technology necessary to accomplish this.
*See Banks v. Booth*, Civ. Docket No. 20-849, ECF No. 100 at 39
(D.D.C. 2020). The government has since implemented its "Capitol
Siege global discovery plan," and made significant strides in
providing discovery to both defendants and defense counsel. *See*
United States' Memorandum Regarding Status of Discovery as of
February 9, 2022, ECF No. 178. Specific provisions of the plan
allow incarcerated defendants who are pending trial to view
video footage. *See id.* at 4-5. Mr. Sabol's argument that he must
be allowed access to a laptop to view discovery if the Court
denies his motion for pretrial release is therefore moot. *See*
Def.'s Mot., ECF No. 102 at 41. Mr. Sabol may make an
application for a laptop if he is unable to take advantage of
the government program or can show it is insufficient.

### C. Mr. Sabol Presents No Valid Constitutional Challenges

Mr. Sabol also argues that his pre-trial detention amounts
to a violation of his rights under the Equal Protection Clause
of the Constitution. Def.'s Mot., ECF No. 102 at 38. The
government responds that none of the "cherry-picked" case
examples Mr. Sabol provides would materially alter the Court's
individualized decision. Gov't's Opp'n, ECF No. 119 at 19. The

Court agrees. Mr. Sabol's argument essentially amounts to an assertion that pretrial detention is an "exceptional treatment," and that the government has not met its burden for pretrial detention here. *See* Def.'s Mot., ECF No. 102 at 38. However, for all the reasons previously discussed, the evidence in this case weighs in favor of pretrial detention.

The Court also reiterates its prior observation that "[w]hile the circumstances of January 6, 2021 were unique, and the day has passed, it cannot be said that every Capitol Riot defendant is no longer a danger because those exact circumstances are unlikely to arise again." Mem. Op., ECF No. 56 at 60. As this Court stated in *Whitton*, "even if the exact circumstances of the January 6 attacks are not 'continuing in nature' or 'likely to be repeated in the future,' the violent offenses [the defendant] committed that day are serious enough on their own to militate against pretrial release." *United States v. Whitton*, 534 F. Supp. 3d 32, 43 (D.D.C. 2021). Nor is the Court persuaded by Mr. Sabol's provision of someone he contends is a "prime example" of a defendant who warrants pretrial detention. Def.'s Mot., ECF No. 102 at 40. The fact that someone else faces even more charges (in a different state, for protest activity on an entirely different issue), and was detained pretrial, or that other sets of protestors were not,

does not in any way affect the individualized inquiry in Mr.

Sabol's case. *Munchel*, 991 F.3d at 1280.

## IV.  Conclusion and Order

For the foregoing reasons, it is hereby

**ORDERED** that Mr. Sabol's Motion for Bond Reconsideration, ECF

No. 102, is **DENIED**.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **June 9, 2022**